**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**MARK LAJEUNESSE, MICHAEL TORRES,
JOHN MOSHER, JOSEPH P. GROSS,
CHRISTOPHER SPRARAGEN, and BRIAN
HART, as Trustees of the I.B.E.W. Local
326 Pension Fund, I.B.E.W. Local 236 Health and
Benefit Fund and I.B.E.W. Local 236 Annuity
Fund, and I.B.E.W. LOCAL 236,**

                              **Plaintiffs,**

                    v.                            **1:18-CV-590
(FJS/CFH)**

**NORTHERN INSTRUMENTATION, INC.,**

                              **Defendant.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **POZEFSKY, BRAMLEY & MURPHY**<br>90 State Street, Suite 1405<br>Albany, New York 12207<br>Attorneys for Plaintiffs | **WILLIAM POZEFSKY, ESQ.** |
| **NORTHERN INSTRUMENTATION, INC.**<br>40 Summit Lake Road Spur<br>Argyle, New York 12809<br>Defendant | **NO APPEARANCE** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

Pending before the Court is Plaintiffs' motion pursuant to Rule 55(b)(2) for entry of a default judgment in favor of Plaintiffs and against Defendant. *See* Dkt. No. 13. Plaintiffs served Defendant "by delivering [two copies of the Summons, Complaint and Notice with General Order No. 25] to

Nancy Dougherty, Business Document Specialist 2, of the New York State Department of State, 99 Washington Avenue, Albany, New York, on May 23, 2018." *See* Dkt. No. 4.

Defendant neither answered nor otherwise appeared within the required time frame. Therefore, Plaintiffs requested a Clerk's Entry of Default on June 18, 2018, *see* Dkt. No. 6, which the Clerk of the Court entered on June 20, 2018, *see* Dkt. No. 7. Plaintiffs filed and served the pending motion for entry of a default judgment on September 21, 2018. *See* Dkt. No. 13.

Plaintiffs seek a default judgment, including injunctive relief, against Defendant. According to the complaint, Defendant "is an employer in an industry affecting commerce as defined in Section 3(5) (11) and (12) of ERISA [29 U.S.C. Section 1002(5)(11) and (12)]" *See* Dkt. No. 1 at ¶ 12. In addition, Plaintiffs allege that, "[a]t all times herein mentioned, Defendant was an employer of employees covered by a collective bargaining agreement who are participants in employee benefit plans and multi-employer plans maintained pursuant to a collective bargaining agreement, . . . and Defendant Northern was obligated to make contributions to the Funds on their behalf in accordance with Section 515 of ERISA [29 U.S.C. Section 1145]." *See id.*

According to Plaintiffs, at all relevant times, "Defendant Northern was signatory to and agreed to be bound by the collective bargaining agreement between The Albany Electrical Contractors Association, NECA, Albany Chapter and the Union effective June 1, 2015 (the "Agreement.")[.]" *See id.* at ¶ 16. Furthermore, under the Agreement and the Trust Agreements and rules and practices of the Funds, "Defendant Northern is obligated . . . *inter alia* to submit to the Funds monthly written reports ("Reports") describing the employees of Defendant covered by the Agreement ("Covered Employees"), the hours worked by such Covered Employees and the payments or contributions to be made for such Covered Employees, and to file such Reports and

make payment to Plaintiffs of all amounts due as shown thereon, by the 15th of the month following the month in which the work covered by the Agreement is performed." *See id.* at ¶ 17. Plaintiffs assert that "[t]he Agreement obligates Defendant Northern to make the payments to the Funds for each hour of work for each of said Defendant's Covered Employees in the jurisdiction of the Union for the months of May, June, July, August and September, 2017." *See id.* at ¶ 18. In addition to these payments, "pursuant to the Agreements and Section 502(g)(2) of ERISA [29 U.S.C. Section 1132(g)(2)], Defendant Northern is liable not only for the amount of payments due, but also for interest, for collection expenses, including, but not limited to, litigation and accounting expenses incurred to obtain or ascertain the amount of delinquencies, and for other interest, additional sums and expenses of collection, as provided in ERISA." *See id.* at ¶ 20.

Plaintiffs assert that "Defendant Northern failed and refused, and continues to fail and refuse, to make the required payments for the months of May, June, July, August and September, 2017, when due, and by reason of its said failure and refusal to make the required payments when due, Northern owes said payments plus interest." *See id.* at ¶ 21. In addition, Plaintiffs allege that "Defendant Northern has failed to file required Reports for the months of May, June, July, August and September 2017 [and,] [i]n the absence of the required Reports for those months, for purposes of this lawsuit the amount of Northern's delinquency is estimated, based on Plaintiff[s'] belief that two Covered Employees for whom contributions were required were employed by Northern in the months of May and June 2017 and one Covered Employee for whom contributions were required was employed by Northern in the months of July, August and September 2017." *See id.* at ¶ 22. According to Plaintiffs' estimate Defendant Northern owes $12,371.20 to the Health and Benefit Fund, $11,611.20 to the Pension Fund, and $2,688.00 to the Annuity Fund for a total for all three

Funds of $26,670.40.  *See id.*

In addition, Plaintiffs contend that "[t]he Agreements obligate Defendant Northern to deduct 'Working Dues' from the pay of each Union member employed by Defendant Northern for each hour worked. . . . Defendant Northern has deducted said Working Dues from the pay of each said Union member, during the foregoing months, but has failed and refused, and continues to fail and refuse, to remit monies so deducted for the months of May, June, July, August and September 2017." *See id.* at ¶ 25.  Plaintiffs estimate that the "amount due to the Union for such months is $1,691.20 . . . calculated based on 4% of the hourly wage package of $37.75 for 1120 estimated hours." *See id.*  Plaintiffs also allege that Defendant Northern is obligated to make payments to the Joint Apprenticeship and Training Fund ("JATF") and has failed to do so for the months of May, June, July, August and September 2017. *See id.*  Plaintiffs estimate that Defendant Northern owes a total of $560.00 to the JATF.  *See id.*

Finally, Plaintiffs assert, upon information and belief, that, "during the years 2016 and 2017, Northern under-reported the number of hours worked by its Covered Employees as reflected on the monthly Reports submitted to the Funds and under-paid payments owed to the three Funds and the Union on behalf of the Covered Employees for the hours they actually worked under the Agreement, and in at least one instance, failed to include one Covered Employee for any hours." *See id.* at ¶ 38.  "Upon being informed by Covered Employees of the aforementioned under reporting and under payment of benefits owed on behalf of those Covered Employees under the Agreement, the Funds wrote to Defendant Northern seeking a compliance audit pursuant to Section 6.12 of the Agreement, and informing Defendant Northern that it would be contacted by the Fund's auditor, Joseph W. McCarthy and Associates to verify the accuracy of contributions that have been

submitted to the Funds and the Union and related entities." *See id.* at ¶ 40. Plaintiffs allege that "Joseph W. McCarthy and Associates made repeated attempts by email and telephone messages beginning in October 2016 to schedule the audit with Defendant Northern's payroll employee, Nicole Menard, [former] Defendant Alan Ethier's daughter, but never was able to schedule the audit." *See id.* at ¶ 42. Plaintiffs, therefore, "seek an audit for the period of January 2015 through September 30, 2017, and require access to various corporate records, including (a) payroll earning records for Covered Employees; (b) New York State Quarterly Tax Reports for all employees (with earning of non Covered Employees redacted if Defendant Norther[n] so desires); [and] (c) certified payroll records for all public works jobs or projects." *See id.* at ¶ 42. Furthermore, "[u]pon completion of their audit, and in the event that it is determined that Defendant Northern under-reported and under-paid required benefits to the Funds and the Union, Plaintiffs [assert that they] are entitled to a judgment awarding them the amount of such under-reported and under-paid benefits together with interest therein at the two (2%) percent over prime rate per year, as provided in the Agreement, pursuant to ERISA Section 502(g)(2)(B) [29 U.S.C. Section 1132(g)] and an additional amount equal to such interest pursuant to Section 502(g)(2)(C)(i) of ERISA [29 U.S.C. Section 1132(g)(2)(C)(i)]." *See id.* at ¶ 45.

## II. DISCUSSION

### A. Default judgment standard

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.,* 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a) the plaintiff must obtain a clerk's entry of default. *See* Fed. R. Civ. P. 55(a) (providing

that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"); N.D.N.Y. L.R. 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment of affirmative relief is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded").  Second, under Rule 55(b), the plaintiff may apply for entry of a default judgment by the clerk "[i]f the plaintiff's claim is for a sum certain" or by the court "[i]n all other cases."  Fed. R. Civ. P. 55(b)(1), (2); N.D.N.Y. L.R. 55.2(b) (providing that "[a] party shall accompany a motion to the Court for the entry of a default judgment pursuant to Fed. R. Civ. P. 55(b)(2), with a **clerk's certificate of entry of default** . . ., **a proposed form of default judgment**, and a copy of the pleading to which no response has been made").

**B.    Liability**

By failing to answer the complaint, Defendant is deemed to have admitted the factual allegations in the complaint.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (noting that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability" (citations omitted)).  However, "before entering default judgment, the Court must review the Complaint to determine whether Plaintiff has stated a valid claim for relief."  *Wells Fargo Bank, N.A. v. Barnes*, No. 3:16-CV-00533 (BKS/DEP), 2018 WL 6028050, *5 (N.D.N.Y. Nov. 16, 2018) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir.

2009)) (other citation omitted).

Based on the allegations in the Complaint, the Court finds that Plaintiffs have established that Defendant is liable under ERISA.

**C.     Damages**

"[I]t is well established that '[w]hile a party"s default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)) (other citation omitted).  A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (stating that "Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages"); Fed. R. Civ. P. 55(b)(2) (providing that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter").

In this case, the Court finds that it is not necessary to hold an evidentiary hearing because,

with the exception of attorney's fees, damages are calculable under ERISA, 29 U.S.C. § 1152(g)(2), based on the detailed affidavits and documentary evidence that Plaintiffs have provided.

### III. CONCLUSION

Having reviewed the entire file in this matter, Plaintiffs' submissions, and the applicable law, and, for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for entry of a default judgment against Defendant, *see* Dkt. No. 13, is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs are awarded judgment against Defendant for the sum of $44,877.96, which includes $26,670.40 in unpaid ERISA contributions, $2,251.20 in unpaid Working Dues and Joint Apprenticeship and Training Fund contributions, $15, 516.36 in interest, and $440.00 in costs, with interest continuing thereon to the date of entry of judgment; and, thereafter, interest thereon from the date of entry of judgment to the date of payment at the rate provided for by 28 U.S.C. § 1961(a); and the Court further

**ORDERS** that, to the extent that Plaintiffs seek attorney's fees for the work that their attorneys performed in relation to this matter, **within 30 days of the date of this Memorandum-Decision and Order**, they shall file an attorney affidavit and detailed billing records, setting forth the dates worked and hours expended and a description of the nature of the tasks completed with regard to this matter; and the Court further

**ORDERS** that Defendant is required to produce its books and records for Plaintiffs' review and audit covering the period from January 1, 2015 to date, to pay the costs and expenses of the audit and the auditor's fees, and to pay all attorney's fees incurred in obtaining the audit; and the

Court further

**ORDERS** that the Court shall retain jurisdiction in this matter until Plaintiffs complete their audit of Defendant's books and records and apply for entry of judgment on contributions and deductions determined due as a result of the audit; and the Court further

**ORDERS** that, within thirty (30) days of the completion of the audit, **and in no event later than 90 days after entry of this Memorandum-Decision and Order**, Plaintiffs shall move for entry of judgment against Defendant for any and all contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest, costs and fees of the audit and any attorney's fees and costs; and the Court further

**ORDERS** that Plaintiffs shall serve a copy of this Memorandum-Decision and Order on Defendant, as well as on former Defendant Alan Ethier and Nicole Menard, by certified mail return receipt requested, and shall file affidavits of service, together with the certified mail receipts, demonstrating that service has been effected; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiffs and against Defendant consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: April 2, 2019
       Syracuse, New York

                                                  Frederick J. Scullin, Jr.
                                                  Senior United States District Judge

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

**(a) Appeal in a Civil Case.**

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.